**PLY–GEM INDUSTRIES, INC.,**
Plaintiff-Appellant,

v.

**Bernard A. GREEN, as Executor of the Estate of John J. Albert, et al.,**
Defendants-Appellees.

No. 715, Docket 73–2151.

United States Court of Appeals, Second Circuit.

Argued March 14, 1974.

Decided July 9, 1974.

Thomas W. Hill, Jr., New York City (Spear & Hill, New York City, on the brief), for plaintiff-appellant.

Edward Brodsky, New York City (Edwin L. Schwartz and Goldstein, Shames & Hyde, New York City, on the brief), for defendants-appellees.

Before HAYS and TIMBERS, Circuit Judges, and DAVIS, Judge.*

TIMBERS, Circuit Judge:

On this appeal from a judgment entered July 12, 1973 after a bench trial in the Southern District of New York, Edmund L. Palmieri, District Judge, (1) which dismissed a complaint in an action brought to recover damages for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and Rule 10b–5 promulgated under the 1934 Act, 17 C.F.R. § 240.10b–5 (1973), and related pendent state claims, all in connection with defendants' sale in 1968 of common stock in their closely held corporation, and (2) which awarded defendants $529,940 damages, plus interest from June 5, 1970, on their counterclaims which alleged a breach by plaintiff of its obliga-

* Hon. Oscar H. Davis, of the United States Court of Claims, sitting by designation.

tions under a stock purchase agreement, the principal issues are whether the record supports the district court's findings that there were no material misrepresentations or omissions and whether the district court correctly computed defendants' damages.

We affirm in part, and remand in part for a minor recomputation of damages.

## I.

The action arises from the 1968 purchase by Ply-Gem Industries, Inc. (Ply-Gem) of 90% of the common stock of Harcord Manufacturing Company, Inc. (Harcord) from John J. Albert and Maxwell B. Gold.[1] Ply-Gem is a publicly held corporation. It is engaged in the manufacture and distribution of plywood and related products. Its common stock is traded on the American Stock Exchange. Harcord is engaged in the manufacture of cardboard and fibre containers.

After months of discussions, appraisals and negotiations between representatives of Ply-Gem and Harcord and pursuant to a formal stock purchase agreement, Ply-Gem acquired the 90% interest of Albert and Gold in Harcord on June 5, 1968.[2] In accordance with the agreement, Albert and Gold received $450,000 in cash and 22,500 shares of Ply-Gem common stock at the closing on June 5.[3] The agreement guaranteed that Albert and Gold would receive from Ply-Gem $20 per share for their 22,500 shares of Ply-Gem stock. Moreover, the agreement provided that, if on the second anniversary of the June 5, 1968 closing (the valuation date) the 10 day average closing price for Ply-Gem stock was less than $20 per share, Ply-Gem at its option would pay the sellers either $20 per share, or the difference between $20 and the average market price. The agreement further provided that, in the event Ply-Gem stock were selling below $15 per share on the valuation date, Ply-Gem could elect to pay the sums due under the alternate repayment options outlined above in four annual installments, with interest at 5% per annum commencing on the valuation date. Finally, Albert and Gold were guaranteed under the agreement an annual 5% cash or stock dividend, or an annual $1.00 per share increase in the $20 guaranteed repurchase price, for "each year . . . so long as the stock is not repurchased".

On June 2, 1970, three days prior to the valuation date, Ply-Gem notified Albert and Gold that it elected to rescind the purchase agreement because of allegedly material misrepresentations and omissions made in 1968. This notification—Ply-Gem's first hint of dissatisfaction with its acquisition of Harcord—was given when Ply-Gem stock was selling at approximately $6.50 per share and shortly before Ply-Gem would have been required under the agreement to make substantial payments to Albert and Gold.

Ply-Gem on July 30, 1970 commenced the instant action, alleging that Albert and Gold had induced it to purchase Harcord by misrepresentations and omissions of material facts, and seeking either rescission or damages. Albert and Gold counterclaimed for the amount due them under the agreement.

After a bench trial, Judge Palmieri filed a comprehensive opinion which included detailed findings of fact and conclusions of law. He rejected Ply-Gem's numerous allegations of fraud, deceit,

1. Albert and Gold were the sole shareholders of Harcord Industries, Inc., from which Ply-Gem formally purchased the 90% interest in Harcord. On January 21, 1969, Harcord Industries was liquidated. Albert and Gold succeeded to its rights and assets and assumed its liabilities.

Albert died after the commencement of this action. His estate has been substituted as a defendant.

2. In December 1968, Ply-Gem purchased the remaining 10% of Harcord common stock from Edward Kime, President of Harcord. Ply-Gem's agreement with Kime contained no repurchase guarantees. He is not a party to the instant action.

3. Pursuant to the agreement these shares were restricted and could not be freely sold.

negligent misrepresentation and breach of warranty, and he awarded Albert and Gold recovery on their counterclaims. The crux of the judge's holding is the following:

> "On the basis of the entire record, the conclusion is inescapable that Ply-Gem's last minute attempt[s] to rescind its contract and its subsequent repudiation of its terms . . . were afterthoughts designed . . . to obviate the fulfillment of its commitments. . . . Ply-Gem's charges of fraud and misrepresentation are unsubstantiated by any credible proof in the case."

## II.

On appeal Ply-Gem has narrowed its position. It now claims only that Albert and Gold failed to disclose to Ply-Gem the fact that Harcord had committed a major portion of its 1968 production capacity to two allegedly unfavorable government contracts for the manufacture of ammunition containers. This claim is contrary to specific and unchallenged findings of the district court as to what was told to and known by Ply-Gem before the agreement was entered into.

The district court found, and the record fully supports the finding, that Ply-Gem had been told that Harcord had a backlog of orders of approximately $600,000; that the government ammunition container business was a substantial but rapidly declining factor in Harcord's total mix of products; that competition in the industry was increasing; and that a "price decline in government business was already occurring." Such disclosures clearly were sufficient to apprise Ply-Gem of what it now claims to be the unfavorable aspects of the two government contracts in question. In short, we hold that the record adequately supports the determination of the district court that "Ply-Gem had knowledge of all of the facts concerning the claimed omissions" and that its Section 10(b), Rule 10b–5 and pendent state claims are totally without merit.

## III.

Ply-Gem also claims that the district court improperly computed Albert's and Gold's damages. The record shows that Judge Palmieri reached his award of damages as follows: (1) he determined the total number of shares to which Albert and Gold were entitled on June 5, 1970 (22,892); (2) he added the three 5% stock dividends for the years 1971–73 (3605 shares); (3) he multiplied the 26,497 share total by $20 per share and arrived at the sum of $529,940.[4] He then awarded interest on the total sum at the statutory rate from June 5, 1970 to the date of judgment.[5] The total award was $644,098.04.

Ply-Gem claims that these computations are incorrect in three material respects. First, it claims that the court erroneously included a total of five 5% stock dividends, rather than the two which it says is provided for in the agreement. Second, it claims that it was entitled to the benefit of the installment repayment option and the 5% interest rate provided for in the agreement. Third, it claims that the court erred in awarding interest from June 5, 1970 on stock dividends to which Albert and Gold were entitled in 1971, 1972 and 1973.

The answer to Ply-Gem's first claim is found in the express terms of the purchase agreement which provides that the 5% dividend is to be paid "each year . . . so long as the stock is not repurchased". This unambiguous

---

4. Judge Palmieri computed damages in accordance with the alternate dividend provisions of the agreement. He properly declined to award damages based on an annual $1.00 increase in the guaranteed repurchase price, but awarded the lesser total based on the annual 5% stock dividends.

5. Prior to September 1, 1971, the legal rate of interest in New York was 7½% per annum. Effective that date, the rate was reduced to 6% per annum. See N.Y.C.P.L.R. § 5004 (McKinney 1974 Supp.).

language clearly negates the claim that the parties intended dividend payments to cease on the June 5, 1970 valuation date.

■■ With respect to Ply-Gem's second claim, of course under elemental principles of contract law, where a contract gives the promisor an option of alternate performances, damages for its breach are computed in accordance with that alternative which results in the smaller recovery. E. g., Branhill Realty Co., Inc. v. Montgomery Ward & Co., 60 F.2d 922, 923 (2 Cir. 1932); Restatement of Contracts § 344, at 565–66 (1932). Under the terms of the instant agreement, however, Ply-Gem was required to make its election as to the installment repayment option on or before the valuation date. Its failure to do so imposed upon it a duty to render complete performance on June 5, 1970. See Williston on Contracts § 1407, at 592 (3d ed. 1968). We hold, therefore, that the court was correct in denying Ply-Gem the benefit of the installment repayment option and in awarding interest at the statutory rate on the $457,840 to which Albert and Gold were entitled on the valuation date.

■ With respect to Ply-Gem's third claim, counsel for Albert and Gold conceded at oral argument that the court erred in awarding interest from June 5, 1970 on the entire value of the stock dividends which were or should have been declared for the years 1971, 1972 and 1973. We assume that the parties can agree on this small sum and that a stipulation correcting the judgment accordingly will be filed with the Clerk of this Court within 30 days of the date of this opinion. If not, we remand to the district court for the minor recomputation of damages indicated.

Affirmed in part; remanded in part.